**GIFTS INTER VIVOS AND CAUSA MORTIS.**

Common Pleas Court of Hamilton County.

MARY L. SUTTON ET AL V. CHARLES W. GALBRAITH ET AL.*

Decided, April 8, 1908.

*Gifts—Inter Vivos and Causa Mortis—Bonds Given by One Sister to Another—In Expectation of Death, but with a Condition Attached.*

Bonds delivered by an invalid to her sister in expectation of death, but on condition that the interest be paid to her and the bonds be returned to her in the event that she needed them constitutes a gift *causa mortis*, where the donor did not cancel the gift and died from the malady from which she was then suffering, although her death did not occur until six months thereafter.

*George S. Hawke,* for plaintiffs in error.
*David Davis* and *J. Q. Martin,* contra.

WOODMANSEE, J.

This cause comes into this court upon petition in error from the probate court.

.The record discloses that Elizabeth L. Galbraith prior to her decease was the owner of ten one hundred dollar United States four per cent. bonds, and the question involved in this case is as to whether or not those bonds should be administered as property belonging to her estate at the time of her death, or whether they were at. that time the property of her sister, Mary L. Sutton, who claims the bonds as a gift from her sister.

At the trial below counsel for Mary L. Sutton claimed the bonds as a gift *inter vivos.* This court agrees with the court below in finding that there was such a condition to the gift as to defeat the claim on that theory. The sole question left for this court to determine is whether or not the plaintiff is entitled to the bonds as a gift *causa mortis.*

There is not very much controversy about the facts in the case. In order for this court to maintain the claim of the plaintiffs it

---

* Reversing *In Re Estate of Elizabeth L. Galbraith,* 4 O. L. R., 186; affirmed by the circuit court, *Galbraith* v. *Sutton,* 11 C. C.—N. S., 262.

must find from the evidence the necessary ingredients of a gift *causa mortis.* It must find that the donor was a competent person and that the gift was given in expectation of death and that death resulted from the physical ailment which the party had at the time of making the gift, and that the gift being personal property must have been delivered and have been accepted by the donee; that the donee had rightful possession of the property at the death of the donor; that no revocation of the gift had been made, and that there was sufficient property exclusive of this alleged gift to pay all debts of decedent's estate and the costs of administration.

The testimony of Mrs. Sutton is to the effect that in the fall of 1904 her deceased sister said to her, ''Oh, Mary, I am sick; I am very sick; I do not think I am going to live very long; I am going to make you a present; I am going to give you some of my bonds.'' Later, in the month of December of 1904, her sister upon returning from a hospital where she had been ill for some time, said to her, ''Mary, I am going to give you some of my bonds; I talked to you about it last fall; I did not do it; I will put it off no longer. The doctor tells me in all probability I will not live a year. I want you to have them. You have a right to them. You know where the money came from.'' The testimony disclosed that the money invested in these bonds came from the estate of the parents of the two sisters.

Mrs. Sutton further testified:

''She gave me the bonds in dispute. There were ten registered bonds. They were sent to Washington and exchanged for other bonds. She delivered them to me. That was in January. She says, 'Mary, the interest will be due on these bonds the first of February. You know how much expense I have and what expenses I have to meet. So when this interest comes you give it to me. Let me get this interest.' I gave her the interest in February. My sister died the following July. I had the control of the bonds after she delivered them to me. They were in my possession. My sister says, 'I don't know how long I am going to live. I do not expect to get well. I don't know just how matters will be. If I should ask you to return those to me will you do it?' I said undoubtedly I will.

She said she didn't expect to get well. The doctor had told her he did not think she would live a year.''

Mrs. Sutton further testified that later Mrs. Galbraith upon delivering the bonds to her said, ''I don't know how long I will live; if I should live and should want them back, will you give them back to me.'' I said, ''Certainly I will.'' This testimony discloses that Mrs. Sutton at no time had absolute control or ownership of the bonds; that, in other words, the bonds were delivered with a condition and because of that condition it was not a gift *inter vivos,* and it is a little surprising to this court that the claim was ever seriously made, but the condition complained of is a condition that goes with every gift *causa mortis;* that is to say, that the donor at any time before death can cancel the gift and reclaim the property and the gift does not become absolute until the death of the donor. If we are to believe the testimony of Mrs. Sutton, we must find that although her sister, Mrs. Galbraith, did not die until more than six months after the delivery of the bonds to her, yet she did die from the malady with which she was afflicted at the time the delivery was made; that she never recovered from it, and that although she asked for the interest that accrued upon the bonds, she never asked either for the possession of the bonds or the delivery of the control of the same to her.

The only point that concerns this court is whether or not Mrs. Sutton correctly states the facts in the case, for the law looks with suspicion upon gifts among relatives, and the uniform rule is that no gift of this sort will be sustained upon the testimony of the donee alone. This court did not see the witnesses upon the stand and therefore could not get any impressions that often come from observing the demeanor of witnesses on the stand. But the court is impressed with the fact that this testimony was certainly not arranged for the purpose of making out a gift *causa mortis,* because no such claim seems to have been made, and if it was gotten up for the purpose of making it a gift *inter vivos,* it absolutely failed in the most essential feature, and for that reason I am constrained to look upon the testi-

mony of Mrs. Sutton as a full and frank statement of all of the facts in the case as she understood them. But following the rule in such cases, I would not sustain the gift upon her testimony alone, and this would not be an expression of a lack of confidence in her testimony, but simply to follow the established rule in such cases. In other words, that a gift must be made out by corroborative testimony.

C. B. Sutton, the husband of plaintiff, corroborates her testimony fully as to the material facts in the case. He does this both in direct and cross-examination, and it seems to have been brought out particularly upon cross-examination in an effort to prove that there was a condition to the gift which made it void as a gift *inter vivos*, and the witness frankly admitted the condition which destroyed his wife's claim to a gift *inter vivos*, but that testimony is surely useful in proving a gift *causa mortis*. So that in addition to having possession of the bonds with the full explanation of the delivery thereof, and the new bonds being in the name of the donee, we have also the statement of the donee and of Mr. Sutton as to the terms and conditions of delivery. We have undisputed evidence of the serious illness of the decedent at the time the gift was made, and that she died without recovering therefrom.

Counsel for defendants have placed much stress upon certain admissions that were claimed to have been made relative to this gift, and the testimony of the appraisers and her co-executor is fully set out in the bill of exceptions.

After fully examining this testimony I am persuaded that such testimony assisted defendants in error in maintaining below that the gift was not *inter vivos*, but I am still firmly convinced that the claim of the gift *causa mortis* has been established, and the decree will be accordingly.    58 Ohio St., 218.